# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division



XEROX CORPORATION,          :          CIVIL ACTION

     Plaintiff,         :

        v.            :

LONG COUNTY BOARD OF     :
EDUCATION; LONG COUNTY
SCHOOL DISTRICT; ROBERT    :
CAGLE, in his individual
capacity; CLYDE D. GOLDEN,  :
in his representative
capacity as a member of    :
the Long County Board of
Education; EMMA L.         :
STRICKLAND, in her
representative capacity as  :
a member of the Long County
Board of Education;        :
FLORENCE D. BAGGS, in her
representative capacity as  :
a member of the Long County
Board of Education; LINDA   :
DELOACH, in her
representative capacity as  :
a member of the Long County
Board of Education; and    :
BILLY W. HALL, in his
representative capacity as  :
a member of the Long County
Board of Education,       :

     Defendants.       :      NO. CV205-175

AO 72A
(Rev. 8/82)

# O R D E R

Plaintiff, Xerox Corporation, filed the above-captioned case against Defendants, Long County Board of Education, Long County School District, former Long County School Superintendent Robert Cagle, and the current individual members of the Board of Education, asserting breach of contract claims. The School District and the Board of Education filed a counterclaim against Xerox, asserting breach of contract and fraud claims.[1]

Presently before the Court are (1) Plaintiff's motion to dismiss Defendants' counterclaim, (2) the School District's motions to dismiss Xerox's complaint,[2] (3) Xerox's motion for

---

[1]

Xerox's suit against the Board of Education may not proceed because the School Board is considered to be an entity not capable of suing or being sued. Cook v. Colquitt County Bd. of Educ., 261 Ga. 841, 841 (1992). As a result, the Board of Education's motion to dismiss will be **GRANTED**. Nonetheless, where the Board of Education is the real party in interest, it may be held liable under Georgia law by filing an action against the current board members in their official and representative capacities, as Xerox has done here. J.J. Black & Co. v. City of Atlanta, 114 Ga. App. 457, 457-58 (1966); Winchester Constr. Co. v. Miller County Bd. of Educ., 821 F. Supp. 697, 699-700 (M.D. Ga. 1993). For the sake of convenience, and because a motion by or against Defendant, Cagle, is not before the Court, the Court will continue to refer to "Defendants" as the School District and School Board (collectively, "Long County" or the "school system").

[2]

The School District's answer styles certain responses to Plaintiff's complaint as "motions to dismiss." Leaving aside the fact that Local Rule 7.1(b) requires that "every motion filed in civil proceedings . . . be accompanied by a memorandum of law citing supporting authorities[,]" the

(continued...)

summary judgment on its complaint and on Long County's counterclaim, and (4) Long County's cross-motion for summary judgment.

Because Defendants' counterclaim states a claim upon which relief can be granted, Plaintiff's motion to dismiss will be **DENIED**. Because genuine issues of material fact remain in dispute regarding Plaintiff's complaint, the parties' cross-motions for summary judgment as to it will be **DENIED**. Because genuine issues of material fact remain in dispute regarding Defendants' breach of contract counterclaim, the parties' cross-motions for summary judgment as to it will also be **DENIED**. Because Long County has produced no evidence of scienter, Xerox's motion for summary judgment on Long County's fraud counterclaim will be **GRANTED**.

## BACKGROUND

Xerox is a New York company that manufactures, markets, and services photocopiers. On March 29, 1999, Superintendent Cagle signed ten contracts to lease photocopiers from Xerox for

---

[2](...continued)
"motions to dismiss" shall be **DISMISSED** as moot, inasmuch as the School District's legal arguments are stated more fully in the parties' summary judgment briefs, and are addressed more appropriately in that posture. See Dkt. No. 69 at 1 (arguing that Xerox neither accepted the leases, nor performed thereunder).

use in the school system.[3]  The equipment leases were to be in effect for sixty months under the agreements.  The photocopiers were delivered and, by the end of 2001, Long County had made over seven million copies with the machines.  During that time, Xerox's representatives made over two hundred trips to the school system to service the machines.

Through September 2001, Long County paid Xerox's monthly invoices, which were sent in accordance with the terms of the lease.  However, in the latter part of 2001, Long County expressed dissatisfaction with the quality of the photocopiers and Xerox's service repair record.  On December 11, 2001, Defendants' attorney sent Plaintiff a notice that purported to cancel the lease agreements.

The leases provided that cancellation by the school system required:  (1) giving written notice that its legislative body failed to appropriate the funds for the leases, (2) stating that it unsuccessfully attempted to find an assignee for the leases, (3) certifying that it would not lease similar equipment in the ensuing fiscal year, and (4) returning the

---

[3] Xerox avers that Cagle entered into five other lease agreements for photocopiers as well.

4

equipment to Xerox at its expense. Dkt. No. 56, Ex. 2 at ¶23(A).

Long County had not met any of the conditions, and Xerox resisted the school system's attempt to rescind the agreements. If Long County defaulted under the contracts, the leases permitted Xerox to charge 115% of the remaining monthly payments as liquidated damages. Dkt. No. 56, Ex. 2 at ¶13. On April 22, 2002, Xerox assessed that amount, $215,904, as due and payable.

Long County contends that the contracts signed by Cagle are null and void. According to Defendants, these leases are not binding because they were never approved by a majority vote of the Board of Education. Long County also maintains that it lacked the power to enter into these agreements because the leases did not comply with Georgia statutes related to multi-year contracts involving public school systems. Long County further avers that the photocopiers were defective, and that the machines were out of service most of the time.

## GOVERNING LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the

AO 72A
(Rev. 8/82)

ground that the plaintiff has failed to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint. In essence, the movant says, "Even if everything you allege is true, the law affords you no relief."

Consequently, in determining the merits of a Rule 12(b)(6) motion, a court must assume that all of the factual allegations of the complaint are true, e.g., United States v. Gaubert, 111 S. Ct. 1267, 1276 (1991), and construe the allegations in the light most favorable to the plaintiff, e.g., Sofarelli v. Pinellas County, 931 F.2d 718, 721 (11th Cir. 1991). "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief." United States v. Baxter Int'l, Inc., 345 F.3d 866, 880 (11th Cir. 2003).

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).


**<u>DISCUSSION</u>**

**I.   <u>Xerox's Breach of Contract Action</u>**

The parties agree that Georgia law applies to the question of contract formation, because Plaintiff's complaint alleges that the agreements were made and performed in Georgia. <u>Ferrero v. Associated Materials, Inc.</u>, 923 F.2d 1441, 1444 (11th Cir. 1991)(under Georgia conflict of laws principles, <u>lex loci contractus</u>, or the law of the state where the contract was executed or was to be performed, applies to questions of contract formation).

Defendants assert that the agreements are invalid under Georgia law because (1) the termination provisions differed

7

from Georgia statutory requirements, (2) Plaintiff did not sign

the agreements, so there was no mutuality of obligation, and

(3) the contracts were not authorized or ratified by the School

District or the Board of Education.


### A.   Georgia Code Section 20-2-506

> On the one hand, the law recognizes, the local
> government must be able to make some contracts and
> agreements; its operations could not otherwise
> succeed.  On the other hand, the law insists, the
> local government must be prohibited from making some
> contracts and agreements; its operations could not
> otherwise succeed.  Obviously, the line between the
> permitted contracts and the prohibited contracts is
> one of pivotal importance — to the local government
> (including its citizens) and to those who purport to
> deal with the local government.  Drawing that line
> has consumed untold amounts of judicial time and
> energy.

R. Perry Sentell, Jr., The Georgia Supreme Court and Local

Government Law:  Two Sheets to the Wind, 16 Ga. St. U.L. Rev.

361, 372 (1999).

In matters of legislation or policy, a school board may

not bind its successors, whether such action is taken by

ordinance or contract.  This venerable legal principle finds

its origin in Williams v. City Council of West Point, 68 Ga.

816 (1882).  In contrast, a long-term contract relating to the

proprietary or business affairs of the school system does not

impede the legislative power of the school board, and is generally permissible. This distinction is codified in Georgia law:

> (b) Except as otherwise provided in this Code section, each county, independent, or area school system in this state shall be authorized to enter into multiyear lease, purchase, or lease purchase contracts of all kinds for the acquisition of goods, materials, real and personal property, services, and supplies, provided that any such contract shall contain provisions for the following:
> > (1) The contract shall terminate absolutely and without further obligation on the part of the school system at the close of the calendar year in which it was executed and at the close of each succeeding calendar year for which it may be renewed as provided in this Code section;
> > (2) The contract may provide for automatic renewal unless positive action is taken by the school system to terminate such contract, and the nature of such action shall be determined by the school system and specified in the contract;
> > (3) The contract shall state the total obligation of the school system for the calendar year of execution and shall further state the total obligation which will be incurred in each calendar year renewal term, if renewed[.] . . .
> (h) Nothing in this Code section shall restrict school systems from executing reasonable contracts arising out of their proprietary functions.

Ga. Code Ann. § 20-2-506 (2005).

Long County contends that, because the contracts' termination provisions differed from the requirements of subsection (b), the school system lacked authority to enter into the leases. Specifically, Long County protests that all

9

multi-year lease agreements are unlawful. Ga. Code Ann. § 20-2-506(b)(1)(2005). Consequently, Long County maintains that the contracts were terminable at its election.[4]

According to Xerox, code subsection (b) does not apply to the school's proprietary or business contracts. Ga. Code Ann. § 20-2-506(h)(2005). Xerox asserts that functions outside the "inner core" of a government's responsibility are proprietary. Xerox has also opined that because the copiers were not purchased for use by the public at large, the leases involved an exercise of a proprietary, rather than a governmental, function. As will be explored below, the Court is not

---

[4] Long County also makes an argument for the avoidance of the contracts under Code subsections 20-2-506(c)(1)-(2), which provide:

In addition to the provisions enumerated in subsection (b) of this Code section, any contract authorized by this Code section may include:
(1) A provision which requires that the contract will terminate immediately and absolutely at such time as appropriated and otherwise unobligated funds are no longer available to satisfy the obligations of the school system under the contract; or
(2) Any other provision reasonably necessary to protect the interests of the school system.

In light of the fact that this code section speaks in permissive, rather than mandatory, language regarding contractual terms ("any contract . . . may include"), the Court fails to see how this section renders the Xerox leases unenforceable. Additionally, Long County's argument from this section appears to be circular, given that it has expressed the view that the safeguards enumerated in subsection (b) of the statute are "other provisions reasonably necessary to protect" the school system's interests. As a result, subsection (c) does not appear to be an independent basis of support for Long County's avoidance of the contracts.

convinced that Xerox's reading of the "governmental versus proprietary" contracts distinction is consistent or, ultimately, persuasive.  To give one brief example, one can imagine a copying machine, or machines, dedicated for teachers' use in making lesson plans and preparing homework assignments for distribution.  Such a copier would not be used by the public, but it would surely implicate the very essence of the public school's <u>raison</u> <u>d'être</u>.

The line of Georgia authority examining the validity of local government contracts is considerable, and calls for some review.  Two early decisions demonstrate the reluctance of the courts to tie the hands of local governments regarding legislative or fiscal priorities.  In <u>Horkan v. City of Moultrie</u>, the court concluded that the city's contract to provide water and sewer services to a local resident in perpetuity, in exchange for the right to lay sewers through the citizen's land, was void as an encroachment on governmental powers.  136 Ga. 561, 562-63 (1911).  In <u>Aven v. Steiner Cancer Hospital Inc.</u>, the court found a city's thirty-five year lease of land to a hospital, in exchange for the hospital's agreement to care for local, indigent cancer patients, was void as an

11

attempt to bind the government regarding a legislative function or priority.  189 Ga. 126, 140-44 (1939).

More recent decisions continue to recognize the freedom of action needed in local government, but also show an increasing recognition that the government can be bound under certain circumstances.  In Brown v. City of East Point, the court concluded that police officers' incremental pay raises, which were mandated by ordinance, were unenforceable against the newly-elected city council because the appropriation of finances involved a governmental function.  246 Ga. 144, 145 (1980).  In City Council of Augusta v. Lee, the court examined the operation of a municipal bus system, and concluded that it was a proprietary function because it was established as a revenue-generating venture.  153 Ga. App. 94, 97 (1980).

In City of Powder Springs v. WMM Props., Inc., the Georgia Supreme Court held that a municipality's agreement to provide a citizen access to its sewer system was enforceable, and thus "proprietary" in nature, because it did not impair a governmental function.  253 Ga. 753, 756-58 (1985).  In Wasilkoff v. Douglas County, the Georgia Court of Appeals found that a multi-year computer system lease was void because its termination requirements were more onerous than those

12

prescribed by the statutory requirements for multi-year leases made by municipalities and county governmens. 227 Ga. App. 232, 232-34 (1997).   The <u>Wasilkoff</u> court did not discuss whether the lease was governmental or proprietary in nature.

In <u>Unified Gov't of Athens-Clarke County v. North</u>, the court found that the decision to build a road was governmental in nature, but that the subsequent steps in starting and completing the project could be viewed as proprietary.  250 Ga. App. 432, 435-36 (2001).  It is difficult to think of a more basic function of local government than road construction and other infrastructure improvements.  Carried to its logical conclusion, <u>North</u> suggests that any number of policy decisions, once made, become "proprietary;" i.e., binding, on subsequently-elected officials, for the purpose of carrying out the projects.

In sum, "the essential inquiry is whether enforcement of the contract would impair, to any significant degree, the new body's exercise of its policy making role."  <u>County Council of Northhampton County v. SHL Systemhouse Corp.</u>, 60 F. Supp. 2d 456, 466 (E.D. Pa. 1999)(interpreting the parallel "governmental versus proprietary functions" distinction under Pennsylvania law); 10A Eugene McQuillin, The Law of Municipal

Corporations §§ 29.100-29.101 (3d ed. 2005).  If these outcomes appear to create harsh results at times for those who purport to contract with the government, the courts have not been overly concerned about such complaints.  The answer given generally has been that those who deal with the sovereign ought to be cognizant of the limits on the government's ability to contract.

After considering these decisions, the Court concludes that the photocopier leases do not impair legislative or policy functions of the School Board as a matter of law, and Long County may not avoid the contracts by virtue of § 20-2-506(b) on summary judgment.  <u>Jonesboro Area Athletic Ass'n, Inc. v. Dickson</u>, 227 Ga. 513, 515-19 (1971)(court could not determine, as a matter of law, whether city held land in a governmental or proprietary capacity).[5]  If the photocopier leases were proprietary in nature, they would not have bound subsequent school boards in terms of legislation or policy.

---

[5]

    While <u>Wasilkoff</u> appears to be the decision closest to the facts here, and indicates that such an agreement is null and void as a matter of law, the Court is not convinced that such a result is required in the case <u>sub judice</u>.  The Court concludes that <u>Wasilkoff</u> is distinguishable on the ground that it likely involved a contract implicating a governmental function.  Such a finding is implicit in the decision because it would otherwise conflict with Georgia Code § 36-60-13(a)(1), and the long line of authority recognizing the distinction between governmental and proprietary contracts.

AO 72A
(Rev. 8/82)

As can be seen from this summary of the relevant case law, the distinction between "governmental contracts" and "proprietary contracts" has often been unclear and inconsistent.   However, even if the Xerox contracts were found to be "governmental" in nature, Long County would not be entitled to judgment as a matter of law, as there is another basis on which the agreement could be binding.

> Consideration of whether [local government] contracts are subject to the prohibition [that a school board may not bind future boards to a given line of policy] involves at least 4 questions:  (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If governmental in nature, is the contract subject to an exception? (3) If not, is the contract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition?

City of Powder Springs, 253 Ga. at 756-757 (footnote omitted).[6]

As explained below, Xerox has produced some evidence that the contracts may have been ratified by Long County.


**B.   Effective Communication of the Offer**

Long County argues that the contracts are not binding because Xerox did not sign the agreements.   Xerox rejoins that

---

[6]

Regarding the second inquiry, one exception under Georgia law involves contracts made under the express authority of a city charter. City of Summerville v. Georgia Power Co., 205 Ga. 843, 844 (1949).

it did not have to sign, or accept, the agreements because it was the offeror. Under Georgia law, a binding agreement exists if both parties manifest assent to be bound in a way that an objective observer would recognize. <u>Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n</u>, 250 Ga. 391, 395 (1982). When an offeror sends a definite and unequivocal writing explaining terms of the offer to the offeree, the offeror demonstrates its intent to be bound.

The parties agree that the contracts could be accepted only upon the Board of Education's authority. <u>See</u> Ga. Code Ann. § 20-2-503. It is axiomatic that "[t]o be effective, an offer must be communicated[.]" 17A Am. Jur. 2d <u>Contracts</u> § 46 (2004). An offer is not effective unless the offeree "reasonably believe[s] that an offer has been made." <u>Id</u>.

Long County does not dispute that Xerox furnished Cagle with detailed lease agreements. The parties agree that Cagle did not have explicit authority to agree to the leases, but Xerox argues that Cagle had apparent or implied authority to enter into the agreements. However, Xerox does not allege that the School Board's conduct caused Cagle reasonably to believe that he had the authority to enter into the agreements. Nor has Xerox averred that the Board of Education signaled to Xerox

16

that Cagle had the power to enter into these agreements. In short, there is no basis on which the Court can find that these agreements may have been authorized when Cagle signed the contracts. Cagle's representations and conduct, and the school system's subsequent conduct, are irrelevant to this analysis. See 3 Am. Jur. 2d Agency §§ 72, 75 (2002).

Still, Cagle was an agent of the School District, and he may have been authorized to accept proposals for business contracts on behalf of the School Board. Consequently, whether Xerox manifested its intent to be bound by furnishing Cagle with the lease agreements is a question of fact for the jury to determine.

## C.   Ratification

Xerox argues that Long County ratified the contracts by accepting benefits under the agreements. When a servant enters into a contract outside the scope of his authority, the master may ratify the contract thereafter by accepting benefits and performing under the agreement. Wilson v. Strange, 235 Ga. 156, 160 (1975); City of Conyers v. Kirk & Co., 78 Ga. 480, 483 (1887). A principal's intention to ratify an unauthorized agreement may be inferred from conduct that reasonably

indicates a desire to affirm the unauthorized act. Id. A school district or school board can ratify contracts that it had the power to authorize in advance, and a school system's acceptance of benefits under an unauthorized contract constitutes evidence of ratification. Wilson, 235 Ga. at 160.

Yet, a principal cannot ratify an agreement unless he knows all the material facts surrounding the transaction. Restatement Second of Agency § 98; W. Nat'l Bank v. Armstrong, 152 U.S. 346, 352 (1894). "Material facts" are those "that substantially affect the existence or extent of the obligations involved in the transaction." Restatement Second of Agency § 91. Whether there has been a ratification in any given case is generally a question of fact. See 3 Am. Jur. 2d Agency § 193 & 352 (2002).

Long County accepted delivery of the copiers, used the copiers to make over seven million copies, and paid Xerox's charges for about thirty months. Nonetheless, there are disputed issues of fact regarding whether any of Defendants, other than Cagle, were familiar with the material terms of the leases, including the length of the contracts and the method of termination envisioned therein. The fact that Board of Education members used the copiers from time to time for school

business does not mean that they understood the material terms of the lease agreements. Cagle Aff. ¶ 6A. Nor does the fact that the school system budgeted for copiers and copier expenses during fiscal years 1998 through 2000 necessarily imply that Defendants understood the leases' material terms. Cagle Aff. ¶¶ 6B & 6D.

Whether Long County ratified the contracts by implication when it accepted benefits thereunder is a question of fact. See, e.g., Diamond Power Specialty Co. v. City of West Point, 11 Ga. App. 533, 535 (1912).

In sum, neither Plaintiff nor Defendants are entitled to summary judgment on Plaintiff's contract action. Genuine issues of material fact remain in dispute regarding the effectiveness of the offer and the ratification of the leases.

## II. Long County's Counterclaim

According to Long County's counterclaim, Xerox failed to perform under the contracts or, in the alternative, Xerox committed fraud with respect to the agreements. Pursuant to the choice of law clause contained in the leases, New York law applies to the interpretation of the parties' obligations under the lease agreements. See, e.g., Nationwide Logistics, Inc.

v. Condor Transp., Inc., 270 Ga. App. 277, 280 (2004).   In contrast, fraud is a tort claim, and under Georgia conflict of laws principles, lex loci delicti, or the law of the state where the tort was committed, applies to the matter.   Int'l Bus. Machs. Corp. v. Kemp, 244 Ga. App. 638, 640 (2000).   The alleged fraud occurred in Georgia.   Therefore, the Court will consider Long County's contract claim under New York law, and the fraud claim under Georgia law.


### A.   Xerox's Alleged Failure of Performance

Long County complains that Xerox abandoned its obligations under the lease agreements by providing equipment of substandard quality and by not providing timely or satisfactory repairs.   As a result, Long County alleges that it made overpayments to Xerox, and that it is entitled to recover the sums paid to Xerox when the company failed to perform under the leases.

Xerox contends that "the party who asserts abandonment has the burden of establishing it."   Rosiny v. Schmidt, 587 N.Y.S.2d 929, 932 (N.Y. App. Div. 1992).   According to Plaintiff, Defendants must show conduct that was "mutual, positive, unequivocal, and inconsistent with the intent to be

bound" to demonstrate abandonment of the leases. <u>Id</u>. However, Long County is not alleging that the contracts were rescinded upon the mutual consent of the parties, which was the situation addressed in <u>Rosiny</u>. <u>See also</u> <u>Armour & Co. v. Celtic</u>, 294 F.2d 432, 435 (2d Cir. 1961).

Rather, Long County avers a unilateral breach of the contract by Xerox, and maintains that Xerox's failure to perform under the agreements entitles it to damages. "Such an abandonment is not technically a rescission of the contract, but a mere acceptance of a situation created by the wrongdoing of the other party." 17A Am. Jur. 2d <u>Contracts</u> § 704 (2004). Contracts involving ongoing performance requirements may be breached in part numerous times. The accumulated effect of many partial breaches may amount to a total breach of contract. When a party has breached a contract, it may be liable in compensatory damages to the non-breaching party. Restatement Second of Contracts § 346.

Xerox denies failing to perform under the contracts, and faults Long County for offering mere conclusory allegations in support of its contention that Xerox abandoned its obligations under the lease agreements. Yet, the problem was serious enough from Long County's perspective to send written

notification to Xerox of the school system's complaints.   On August 15, 2001, the new Long County School Superintendent, Dean M. Brown, sent a letter to Xerox, which read in part: "The Long County Board of Education has been extremely dissatisfied with the performance of Xerox machines installed in our school system.   We have had repeated problems with equipment performance and service response from Xerox."   Dkt. No. 77 at 30.

Moreover, a Xerox document dated October 22, 2001, tends to bolster Defendants' contention that Plaintiff  failed to perform under the contracts.   The document reflects some of the perceived shortcomings that Long County identified with the copiers, and the proposed solution offered by Xerox amounted to a major overhaul of the leases' terms.   The Xerox "Executive Summary" provides:

> The Xerox DC20's challenge has prompted us to take some aggressive actions for permanent resolution. In summary:
>> 1.   All (eight) of the DC20s and DC220s would be replaced with Xerox Document Centre DC432s. This will increase the speed of this group of machines by 38%.
>> 2.   All (four) of the DC 265s would be replaced with Xerox Document Centre DC 470s.   This gives LCBE a 33% increase in the amount of documents that can be handled in the Automatic Document Feeder.
>> 3.   This overall solution increases the amount of copies included by 20%.

22

. . .

      6. This solution can be implemented at a savings to LCBE.

Dkt. No. 77 at 25.

According to Cagle's affidavit, the school system had fourteen separate Xerox photocopiers in use. Cagle Aff. ¶ 7. The proposed replacement of twelve of fourteen machines by Xerox provides some basis to support Defendants' breach of contract counterclaim. Whether Xerox failed to perform, and whether Xerox's failure to perform was total and material under New York law, are questions of fact for the jury to determine. E.g., Cont'l Ins. Co. v. RLI Ins. Co., 161 A.D.2d 385, 387 (N.Y. App. Div. 1990). Summary judgment is not warranted to either party on Defendants' contract counterclaim because genuine issues of material fact remain in dispute.


**B. Long County's Fraud Claim**

According to the Federal Rules of Civil Procedure, fraud must be pled with particularity. Fed. R. Civ. P. 9(b). In that regard, Defendants' amended counterclaim alleges:

> Plaintiff never executed the alleged contract, yet they represented to Defendants that Plaintiff had contracted with Defendants and that Defendants owed them monthly payments. Plaintiff knowingly misrepresented to Defendants that Plaintiff had executed the alleged contract and that Defendants

owed Plaintiff money for Plaintiff's performance under the non existent contract and Plaintiff falsely billed Defendants and collected from Defendants. Plaintiff falsely induced Defendants to send Plaintiff money by false billing and false representations [that] Defendants owed Plaintiff money for Plaintiff's performance and under the unexecuted contract. Defendants did not have a copy of the contract which was in Plaintiff's possession and Defendants relied upon Plaintiff's misrepresentation and false promises. Defendants were damaged by Plaintiff's false claims, false billing and false misrepresentations by payments of over $75,000.00 which they did not owe to Plaintiff.

Dkt. No. 59 ¶6.

If true, what Long County alleges states a claim upon which relief can be granted, and the claim is not due to be dismissed under Rule 12(b)(6) or Rule 9(b).

However, Xerox has also denied that there is any evidence supporting this cause of action, which would entitle it to summary judgment.

In reviewing such contention, 'we evaluate whether some evidence supports the five elements of fraud: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff.'

Ades v. Werther, 256 Ga. App. 8, 11 (2002)(quoting Lakeside Invs. Group, Inc. v. Allen, 253 Ga. App. 448, 450 (2002)).

Long County alleges two false representations by Xerox: (1) that Plaintiff lied about executing the contracts and (2)

AO 72A
(Rev. 8/82)

"that Defendants owed Plaintiff money for Plaintiff's performance under the non existent contract[.]" Dkt. No. 59 ¶6. According to Defendants' amended counterclaim, the latter misrepresentation was demonstrated when Xerox billed and collected monies not owed.

The Court has explained previously that Xerox was not obliged to sign its offers for them to be effective. The purported misrepresentation, then, boils down to the allegation that Xerox lied to Long County about the school system owing it money because the contracts were ineffective. Yet, not every invalid contract will give rise to tort liability. Even if the contracts were null and void, there is insufficient proof to sustain a fraud claim against Xerox. Long County has failed to present any evidence that Xerox understood that the contracts were ineffective, particularly when it was billing and collecting monies paid through the regular invoices it sent to the school system. The failure to show that Xerox may have acted knowingly, or with scienter, is fatal to Long County's claim of fraud.

AO 72A
(Rev. 8/82)

**CONCLUSION**

For the reasons explained above, the Board of Education's motion to dismiss is **GRANTED**, Dkt. No. 67, and Xerox's motion to dismiss is **DENIED**, Dkt. No. 86.  As further discussed, Plaintiff's motion for summary judgment on Defendants' fraud counterclaim is **GRANTED**, but the parties' cross-motions for summary judgment are otherwise **DENIED**.  Dkt. Nos. 53 & 74. Finally, the School District's motions to dismiss are **DISMISSED** as moot.  Dkt. No. 69.

**SO ORDERED**, this ____21st____ day of March, 2006.


_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)